In the Matter of the Arbitration between UTILITY LAUNDRY SERVICE, INC., Appellant, and SIDNEY SKLAR et al., Respondents.

Submitted November 14, 1949; decided December 29, 1949.

*Herman Rosenfeld* and *Abraham L. Bauman* for appellant. The award was within the jurisdiction of the arbitrator and was properly confirmed at Special Term. (*Matter of Sperling* v. *Newtown Laundry Service,* 264 App. Div. 878; *Matter of Marchant* v. *Mead-Morrison Mfg. Co.,* 252 N. Y. 284; *Matter of General Footwear Corp.* v. *Lawrence Leather Co.,* 252 N. Y. 577; *Matter of Motor Haulage Co.* [*Teamsters' Union*], 272 App. Div. 382, 298 N. Y. 208; *Matter of General Dry Cleaners,* 75 N. Y. S. 2d 615.)

*Morton Singer* and *Louis A. Kass* for respondents. I. No person is under a duty to arbitrate a dispute unless, by clear language, he has agreed to do so. (*Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130; *Schafran & Finkel, Inc.,* v. *Lowenstein & Sons,* 280 N. Y. 164; *Matter of Kelley,* 240 N. Y. 74; *Matter of Huxley,* 294 N. Y. 146; *Matter of Tanenbaum Textile Co.* v. *Schlanger,* 287 N. Y. 400; *Matter of Priore,* 204 App. Div. 332; *Matter of Amsterdam Dispatch, Inc.,* v. *Devery,* 254 App. Div. 233, 278 N. Y. 688; *Matter of Eager Constr. Corp.* v. *Ward Foundation Corp.,* 255 App. Div. 291; *Matter of General Silk Importing Co.,* 200 App. Div. 786, 234 N. Y. 513; *Dodds* v. *Hakes,* 114 N. Y. 260; *Matter of Metro Plan, Inc.,* v. *Miscione,* 257 App. Div. 652; *Matter of International Assn. of Machinists* [*Cutler-Hammer, Inc.*], 271 App. Div. 917, 297 N. Y. 519.) II. Where one of the parties objects to the jurisdiction of the arbitrator and does not execute a submission in writing, the arbitrator has lost jurisdiction of the controversy and cannot act thereon. (*People ex rel. Union Ins. Co.* v. *Nash,* 111 N. Y. 310; *Finucane Co.* v. *Board of Educ. of City of Rochester,* 190 N. Y. 76; *Matter of Morris White Fashions* [*Susquehanna Mills*], 295 N. Y. 450; *Matter of Hesslein & Co.* v. *Greenfield,* 281 N. Y. 26; *Finsilver, Still & Moss* v. *Goldberg, Maas & Co.,* 253 N. Y. 382; *Matter of Buitoni Products* v. *Nappi,* 275 App. Div. 215; *Matter of Bullard* v. *Grace Co.,* 240 N. Y. 388.)

BROMLEY, J. The Appellate Division has reversed appellant's judgment for damages, rendered in confirmation of an arbitra-

tion award, upon the ground that the parties' agreement to arbitrate did not afford the arbitrator power to assess damages.

Prior to November, 1945, respondents, Sklar and Shampaner, were employed by Utility Laundry Service, Inc., as salesmen and drivers. Each of their individual employment contracts contained a covenant binding the employee, during one year after termination of his employment, to refrain from soliciting any customer of the employer whose name had been learned through the employment. Each employee also deposited $200 with the laundry company and authorized the employer " to deduct from the moneys so paid over such sum or sums as shall be necessary to fully reimburse said ' Company ' for any damage or loss sustained by it occasioned by the ' Employee '." In respect of that remedy each agreement continued: — " the remedy provided for by this paragraph shall not be construed as an exclusive remedy or waiver of the right of the ' Company ' to apply to any court of competent jurisdiction for injunctive relief or otherwise, it being the intention of the parties hereto that the aforesaid provision and any remedy afforded by application to any court of competent jurisdiction for relief by way of injunction shall be independent remedies and that the denying or granting of either thereof upon application therefor, shall not prejudice or affect the other remedy or right." Neither contract contains any reference to arbitration.

In November, 1945, the collective bargaining representative of the drivers entered an agreement with Utility covering their employment. All individual contracts with the employees were to remain " in full force  *  *  *  except as to such provisions thereof as are inconsistent with the specific provisions of this agreement ". The collective contract contains provision for appointment of an " Impartial Chairman ", and for arbitration before him of " any and all matters in dispute between the parties hereto arising out of this agreement ". Another provision of that contract reads as follows: " The Impartial Chairman shall have jurisdiction to hear and determine (1) complaints by drivers of discriminatory treatment by the Employer resulting in an impairment of the drivers' earnings; and (2) complaints by the Employer of breaches by drivers of the negative covenants of their individual agreements with the Employer. *Such individual agreements shall be deemed modified accordingly.*" (Emphasis supplied.)

The collective agreement also provides for a grievance procedure, whereby " complaints " are to be taken up first by the shop chairman and a representative of the employer. Upon their failure to adjust a " complaint ", a union representative is to discuss the matter with the employer, and continued failure to reach agreement shall cause the complaint to be referred to the impartial chairman. The precise character of such complaints is not defined.

Sklar and Shampaner left the employ of Utility on August 29, 1947, to establish a laundry business of their own, and later were accused by Utility of soliciting customers in violation of their covenants. In an arbitration proceeding subsequently held under the collective agreement both ex-employees conceded the unlawful solicitation and objected to determination of the damages suffered by Utility. Shampaner countered with a claim that Utility owed him his $200 deposit and $100 in accrued wages. The arbitrator found that Sklar and Shampaner had breached their covenants and thereby caused Utility to suffer a loss of business in the amount of $325 per week. His award enjoined further solicitation for one year from August 29, 1947, ordered respondents to pay Utility $2,700 in damages, and denied Shampaner recovery of the $300. After the injunctive provision had expired the award was confirmed at Special Term, and a judgment entered for Utility in the amount of $2,700. Shampaner did not then challenge the denial of his counterclaim. That judgment has been vacated, after modification of the order of confirmation so as to strike therefrom all reference to damages, upon the ground that the issue was not within the scope of the parties' agreement to arbitrate.

An agreement to arbitrate " any and all controversies " arising under a contract will be construed as affording " authority to assess the damages against the party in default ". (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.,* 252 N. Y. 284, 298, 299.) The issue must turn upon the intent of the parties as expressed in their agreement, and the general submission of " ' any dispute ' " has been held to confer power to award damages (*Matter of General Footwear Co.* v. *Lawrence Leather Co.,* 252 N. Y. 577).

Respondents had bound themselves, through the collective agreement, to submit any " complaints " concerning their covenants to the impartial chairman. No restriction of his author-

ity can be inferred from that language. The provision stands by itself, unaffected by the section governing " disputes " between employer and union, or by the fact that a grievance procedure was established for complaints arising during the period of employment. Nor can we say that an award of dam-- ages would conflict with an implied limitation of the drivers' liability on this head to the $200 deposited under their individual contracts. That remedy was " not to be construed as exclu- sive ", and the individual contracts were modified expressly by the arbitration agreement. Under the latter contract the award of damages was proper.

The judgment of the Appellate Division should be reversed, and that of Special Term affirmed, with costs in this court and in the Appellate Division.

CONWAY, J. (dissenting). I am unable to agree with the opinion for reversal. It is quite clear, and the opinion is not to the contrary, that the respondent salesmen and drivers were bound by the negative covenants in the individual employment contracts and had deposited with the appellant laundry company $200 with authorization to the company " to *deduct* from the moneys so paid over such sum or sums as shall be necessary to *fully reimburse* said ' Company ' for any *damage* or loss sus- tained by it occasioned by the ' Employee '." (Emphasis sup- plied.) That was to be the total of the damage possible, for the damage was to be *deducted* from that sum. That was to permit the employer to catch up with the derelictions of the employee and, if the employer then saw fit, to apply to the court for an injunction. That was the alternative remedy provided in the contract. It was specifically provided that the deduction was not to be an exclusive remedy, but that there was to be an additional independent remedy by way of injunction and that neither of those two alternative remedies was to be exclusive. The individual employment contracts did not provide for arbi- tration.

Then in November, 1945, a collective bargaining representa- tive of the drivers entered into an agreement with the appellant company covering the employment of respondents. It was spe- cifically provided that all the individual employee contracts were to remain in " full force * * * except as to such pro- visions thereof as are inconsistent with the specific provisions

of this agreement ''. Then followed the provision for the appointment of an '' Impartial Chairman '' and for arbitration before him of any disputed matters arising out of the collective bargaining agreement.

Then there is the provision of which we must construe the meaning. Insofar as material it reads: '' The Impartial Chairman shall have jurisdiction to hear and determine * * * (2) complaints by the Employer of breaches by drivers of the negative covenants of their individual agreements with the Employer. *Such individual agreements shall be deemed modified accordingly.*'' (Emphasis supplied.)

What that provision was intended to accomplish was to insert in the individual employment contracts the right of the employer to submit to the impartial chairman '' breaches by drivers of the negative covenants of their individual agreements with the Employer.'' It must be remembered that the individual contracts were to remain in '' full force '' except insofar as their provisions were inconsistent with '' the specific provisions of this agreement ''. The provision quoted was a specific provision and to that degree only were the individual agreements modified. It was never intended, and the language is not capable of such construction, that by that provision employees who had deposited $200 each to '' fully reimburse '' their employer for breach of their agreements should find themselves obligated to pay damages, as in this case, of $2,700. The amount of damages recoverable under the individual contracts was not enlarged because under the collective agreement the dispute over such damages might be submitted to an impartial chairman rather than to a court. No one will argue that the employer could have obtained more than the $200 deposit under each individual contract. Where there was modification of the individual contracts by a provision as to an additional *forum* to which the employer might turn, the *measure of damages* specifically provided by the parties was not thereby altered or increased.

The order should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE and FULD, JJ., concur with BROMLEY, J.; CONWAY, J., dissents in opinion.

Judgment accordingly.