8 N.Y.2d 414 (1960)
In the Matter of the Arbitration Between Publishers' Association of New York City, Respondent, and New York Stereotypers' Union Number One, Appellant. (Two Proceedings.)
Court of Appeals of the State of New York.
Argued October 18, 1960
Decided December 1, 1960.
Thomas J. Craig, Jr., for appellant in both proceedings.
Andrew L. Hughes for respondent in the first proceeding.
Andrew L. Hughes and Charles T. Bates for respondent in the second proceeding.
Judges DYE, FULD, FROESSEL, VAN VOORHIS, BURKE and FOSTER concur.
*416 Chief Judge DESMOND.
These are two separate arbitrations under two successive collective bargaining agreements between these parties. The first proceeding arose under the agreement which covered the period from December, 1956 to December, 1958. We agree with the Appellate Division that sections 57 and 62 of that contract were properly applied to the situation presented and that it was correct to order the union to participate in the selection of a fifth member of the Joint Conference Committee.
The second above-entitled appeal brings up the interpretation of the 1958-1960 contract between these parties and calls for more extended discussion.
The arbitration provision in the second contract says that there shall be a Joint Conference Committee of four members, two selected by each party, and "To this Committee shall be referred for settlement any matter arising from the application of this agreement if such matter cannot be settled by conciliation between the Union and the Publisher involved." In the early morning hours of February 18, 1959 (or so it is claimed by the *417 association), about 60 stereotypers employed at the New York Times engaged in a work stoppage at the direction, it is said, of the "Chapel Chairman" who is a sort of a shop steward of the stereotypers. The Publishers' Association later sent a telegram to the President of the Stereotypers' Union announcing that the association was filing a grievance because of this work stoppage, the telegram asserting that the stoppage was a violation of certain provisions of the contract and giving notice that at the hearing of the grievance before the Joint Conference Committee the association would demand damages. The union by answering letter wrote that it would participate in the selection of a fifth or independent arbitrator and would arbitrate the question of whether this work stoppage was a violation. It insisted, however, that there was no basis for arbitration "as to the matter contained in the balance of the telegram." In other words, the union said that it was not required to and would not arbitrate the question of damages. The association then brought this proceeding for an order to direct the union to proceed to an arbitration of the whole matter.
At Special Term the motion was granted by an order which stated: "The arbitration clause in the current agreement of the parties is sufficiently broad to include therein as an arbitrable issue the matter of damages arising from the alleged breach of the agreement." The Appellate Division, First Department, unanimously affirmed without opinion and we granted leave to appeal.
The arbitration clause of this collective bargaining contract does not include the word "damages" but it is a broad covenant providing that there shall be referred to the Joint Conference Committee "any matter arising from the application of this agreement". We know that innumerable arbitrations of damage questions are held pursuant to arbitration agreements which do not directly mention "damages". No reason appears for a different result here. Our own records show that under a similar agreement between these same two parties the question of damages was arbitrated and litigated although, because of insufficient proof (but not because of contract limitations), no damages were in fact awarded by the arbitrators in that instance (Matter of Publishers' Assn. of New York City [New York Stereotypers' Union], 1 A D 2d 941, motion for stay denied 1 N Y 2d 860).
*418 The landmark arbitration case of Matter of Marchant v. Mead-Morrison Mfg. Co. (252 N.Y. 284, 298-299) says that an agreement in a contract that all controversies growing out of it should be arbitrated  or any equivalent agreement  authorizes the arbitrators to assess damages. The Marchant case held, as did other cases (Matter of Utility Laundry Serv. [Sklar], 300 N.Y. 255; De Lillo Constr. Co. v. Lizza & Sons, 7 N Y 2d 102), that a general arbitration clause regardless of precise language ordinarily authorizes arbitration of damages. Of course, we are not discussing consequential damages since no such question is before us. Appellant cites Matter of New York Mirror (Potoker) (5 A D 2d 423; see, also, Matter of Potoker [Brooklyn Eagle], 2 N Y 2d 553) but the Potoker decisions have no particular bearing on our problem. The union is really arguing here that, while the arbitrators can decide whether or not there is a violation and a breach, any claim for damages as a result of a violation or a breach so found would have to be the subject of a separate suit at law. There is no reason to think that the parties contemplated successive litigations arising out of one violation.
The other argument made by appellant union basis itself on section 876-a of the Civil Practice Act and Martin v. Curran (303 N.Y. 276). That is, the union points out that under section 876-a and other New York statutes an unincorporated association cannot be held liable except on proof which would make all the members liable individually. The union says that, with this statutory immunity in existence, the intent of this agreement could not have been to authorize an award of damages for a violation which actually involved only about 60 of the union's 1,100 members. There are at least two answers to this. First, Matter of Ruppert (Egelhofer) (3 N Y 2d 576) held that arbitrators under appropriate language in an agreement could order an injunction even though section 876-a would prevent a court from issuing an injunction on the same facts. The second and more general answer is that the question of arbitration clause coverage is one of intent, damages are a most common feature of arbitration awards and nothing before us suggests that these parties intended their arbitrations to result in futile declarations only. If the parties intended to prohibit the arbitrators from exercising the customary function of fixing damages, they probably would have said so, especially since, under *419 an earlier but apparently identical form of arbitration agreement between these same parties, the association had sought damages and the question of damages had been tried out before arbitrators with no complaint from the union (see Matter of Publishers' Assn. of New York City [New York Stereotypers' Union], motion for stay denied 1 N Y 2d 860 [1956], supra).
Both orders appealed from should be affirmed, with costs.
Orders affirmed.