CARROLL, DONALD K., Judge.
The plaintiff, an employers’ association, has appealed from an order entered by the Circuit Court for Duval County dismissing without prejudice its suit for a declaratory decree construing a collective bargaining agreement its members had entered into with the defendant labor union.
The crucial question before us on this appeal is whether the Circuit Court properly dismissed the suit in view of an article of the said agreement setting up a procedure for settling the grievances of either party arising out of the interpretation or enforcement of the agreement.
On or about July 1, 1961, the members of the plaintiff association and the defendant union signed a collective bargaining agreement. Section 1, Article VI, of the agreement contained the schedule of hourly wage rates, including a 20-cent hourly increase effective July 1, 1963, 10 cents of which would be used toward the establishment of a welfare fund. In a provision immediately following this wage schedule, the parties agreed that during the first two years of the agreement they would study and investigate, separately and jointly, the feasibility of the establishment of the proposed welfare fund; that, in the event both parties decided that such establishment was not feasible, the 10 cents set aside for that purpose would instead go into the wage scale.
*417 Subsequent to the signing of this agreement the parties thereto met independently and jointly on the subject of the proposed welfare fund but reached opposite conclusions, the employers concluding that the fund was not feasible and the union finding that it was feasible and demanding that the fund be established.
On June 28, 1963, three days before the 20-cent wage raise was to become effective under the agreement, the plaintiff filed in the Circuit Court the instant suit seeking a judicial declaration construing the said agreement and decreeing the rights and obligations of the parties in respect to the establishment of a welfare fund. In its complaint the plaintiff stated that each of its members was agreeable, as of July 1, 1963, to pay 10 cents of the 20 cent per hour increase into the trust department of a certain bank to be held in trust subject to disposition in accordance with the decree of the court; that is, if the court should hold that the establishment of the welfare fund is feasible, the trust money would be paid to the trustees of the welfare fund when established; but, if the welfare fund should be held to be not feasible, the trust money would be paid to the respective employees.
In its answer to the complaint the defendant labor union says that, as appears from the face of the complaint, the agreement between the parties, in Article VIII thereof, “provides for complete and adequate procedures to be followed by the parties for the final and binding settlement of disputes arising out of interpretation or enforcement of said agreement and that such procedures are now pending, the defendant having appealed the instant dispute to the Local Joint Adjustment Board pursuant to Section 2 of said Article VIII of said agreement.”
Article VIII of the collective bargaining agreement provides in Section 1 that grievances of the employer or the union “arising out of interpretation or enforcement of this Agreement” shall be settled between the employer and the duly authorized representative of the union “if possible.” Section 2 provides that grievances not settled in accordance with Section 1 may be appealed by either party to the Local Joint Adjustment Board in the area in which the work is performed, which board shall meet promptly but in no more than seven days following the request for its services, “to render a final and binding determination, except as provided below.” The said board shall consist of an equal number of representatives of the union and of the local employers’ association, and both sides shall cast an equal number of votes at each meeting.
Section 3, Article VIII, of the collective bargaining agreement provides that grievances not settled as provided in Section 2 because of a deadlock between the parties to the Local Joint Adjustment Board or because of its failure to act, may be appealed by either party to a panel consisting of one representative chosen by the Sheet Metal Workers’ International Association and one chosen by the employer involved. The said panel shall meet promptly, but in no more than seven days following the request for its services, to render a final and binding determination “except as provided below.” Section 4 of Article VIII provides that grievances not settled as provided in Section 3 because of a deadlock between the parties to the panel, may be appealed by either party to the National Joint Adjustment Board; as established by the aforementioned international association and a national contractors’ association.
The above provisions in Article VIII of the collective bargaining agreement form the basis for the chancellor’s ruling in the final order appealed from, dismissing the plaintiff’s cause. The chancellor stated in the order that it appeared to the court that the said Article VIII “embodies a complete procedure, agreed upon by the parties, for the interpretation of Section 1 of Article VI of that agreement * * He further found that the parties had been utilizing the procedure in Article VIII “for some *418 months before this case was filed,” were still utilizing it when the case was filed, “and will continue to utilize it until ‘final and binding determination’ unless this court prevents them from doing so by assuming jurisdiction in this case.” In his order the chancellor further stated that, if Section 1 of Article VI of the agreement should be construed to require the establishment of a welfare fund, it appeared to the court that “the mechanics thereof can better be prescribed by the representatives of the contending parties designated in Article VIII than by this court.” Then the chancellor gave the following as his reason for declining to assume jurisdiction and render a declaratory decree:
“This court could properly assume jurisdiction in this case, but, under those circumstances, conceives that it should exercise its judicial discretion to leave the contending parties to the procedure they agreed upon for the interpretation of their contract, unless that procedure is not expeditiously pursued.”
Thereupon, the chancellor ruled:
“This case is dismissed, without prejudice to the right of the Plaintiff to invoke the jurisdiction of this court by a new action for declaratory decree if the defendant should fail diligently to pursue the procedure in article VIII of that agreement to ‘final and binding determination.’ ”
Section 87.01, Florida Statutes, F.S.A., among other things, expressly vests the circuit courts of this state with the power, upon a filed complaint, to declare rights, status, and other equitable or legal relations, and render declaratory decrees as to the existence of any immunity, power, privilege, or right.
The courts of Florida, however, have declared that, along with the jurisdiction to render declaratory decrees, our circuit courts are endowed with a discretion in the granting of relief in declaratory actions, and such granting is not a matter of right of a litigant. See North Shore Bank v. Surf side, 72 So.2d 659 (Fla.1954).
The circuit courts are clothed with a sound judicial discretion in determining whether to exercise their jurisdiction to enter declaratory decrees.
This rule was recognized by the Supreme Court of Florida in Bowden v. Seaboard Air Line R. Co., 47 So.2d 786 (1950), an appeal from a Circuit Court order dismissing a complaint seeking a declaratory decree construing certain deeds. In that case the Supreme Court quoted with approval the following from its earlier opinion in Ready v. Safeway Rock Company, 157 Fla. 27, 24 So.2d 808 (1946) concerning the effect of the Florida Declaratory Judgments Act (Chapter 87, Florida Statutes, RS.A.):
“ * * * The circuit courts are not only clothed with jurisdiction to hear and enter declaratory decrees as required by the act, but they are also clothed with discretion to determine whether or not the moving party states a case sufficient to motivate jurisdiction as measured by the test defined in this opinion. * * * ”
The “test” referred to near the end of this quotation is apparently that found in a later paragraph of the Supreme Court’s opinion in the Ready case as follows:
“Viewed in its proper perspective, the Declaratory Judgments Act is nothing more than a legislative attempt to extend procedural remedies to comprehend relief in cases where technical or social advances have tended to obscure or place in doubt one’s rights, immunities, status or privileges. It should be construed with this objective in view, but it should not be permitted to foster frivolous or useless litigation to answer abstract questions, to satisfy idle curiosity, go on a fishing expedition or to give judgments that serve no useful purpose. It should be construed to aid those who have a meritorious cause *419 rather than to provide a way of escape for those who would be adversely affected. There is no reason whatever why the highway to justice should be strewn with hurdles and pitfalls that make one who secures it wonder if the ‘game is worth the candle.’ ”
In the Bowden case, supra, the Supreme Court, after quoting the above rule as to the discretion of Circuit Courts, affirmed the chancellor’s order of dismissal and said:
“In the exercise of his sound judicial discretion, the learned Chancellor dismissed the bill for declaratory decree. No abuse of such prerogative has been clearly demonstrated.”
In view of the cited Florida decisions, in the final analysis the question before us is whether the appellant has clearly demonstrated that the chancellor abused his sound judicial discretion in dismissing the cause without prejudice. In our opinion, not only has no abuse of discretion been demonstrated in this appeal, but we think that the chancellor in his order exercised a very sound judicial discretion in ruling as he did.
No Florida decision has been found involving the precise point before us, but the problem confronting the District Court of Appeal, Third District of Florida, in National Airlines, Inc. v. Air Line Pilots Association International, 154 So.2d 843 (1963), is somewhat analogous to the problem we are facing. In that case the pilots association brought an action against the airline to enjoin violations of their collective bargaining agreement. In its answer to the complaint the airline alleged that it was required by the Railway Labor Act (45 U.S.C.A. § 151 et seq.) to establish a Board of Adjustment to resolve grievances; that it and the pilots association [in a collective bargaining agreement] had established a System Board of Adjustment, which constituted an administrative remedy available to the pilots and their association but the pilots and the association “have failed to exhaust the administrative remedy afforded them by the contract and therefore have no standing to bring a court action.” Nevertheless, the chancellor entered a summary final decree for the pilots association and the airline appealed to the District Court of Appeal, which reversed the decree for the following reasons:
“In National Airlines, Inc. v. Metcalf, Fla.App.1959, 114 So.2d 229, we held that the jurisdiction of the System Board of Adjustment to adjust grievances and disputes of the type here involved is exclusive. We further held that by agreement, the award of a said Board was final and binding and neither the federal courts nor the state courts would be authorized in re-trying the merits of the controversy. We stated that this, however, would not preclude review of procedural due process and jurisdictional limitations.
“In accordance with the Metcalf decision, supra, if the trial court should determine that the plaintiff has failed to sustain its burden of proving that it attempted to bring this grievance to the Board, the suit must be dismissed. If the plaintiff successfully proves compliance with such grievance procedure, the trial court can have jurisdiction in this cause only to the extent that the Board has refused to exercise its jurisdiction, has refused to comply with the procedures set up by the Railway Labor Act and their collective bargaining agreement, or is without authority to grant the relief sought.”
In the case at bar the chancellor evidently used similar reasoning in reaching his conclusion in the order appealed from, exercising his judicial discretion to leave the parties to the procedure they had agreed to for the interpretation of their collective bargaining agreement “unless that procedure is not expeditiously pursued.” With fairness to all parties he dismissed the case without prejudice to the plaintiff to invoke the jurisdiction of his court by a new action for declaratory decree if the *420 defendant should fail diligently to pursue the procedure in Article VIII of the agreement to “final and binding determination.”
The order appealed from, we hold, is within the chancellor’s judicial discretion, and accords fully with the dictates of law and justice, so the said order must be and it is
Affirmed.
STURGIS, C. J., and WIGGINTON, J., concur.