### WARFORD v. LEHIGH PORTLAND CEMENT CO.
No. 115402.

Small Claims Court, Dade County.

December 3, 1963.

Sylvester P. Adair, Homestead, for plaintiff.

Talbot D'Alemberte of Scott, McCarthy, Preston & Steel, Miami, for defendant.

MARTIN P. SHACHAT, Judge.

This action was brought by the plaintiff, George E. Warford, against his former employer, Lehigh Portland Cement Co., for vacation pay allegedly due. The facts reveal that the plaintiff was employed by the defendant under a collective bargaining agreement between Lehigh Portland Cement Co. and Local No. 392 of the United Cement, Lime & Gypsum Workers International Union. This agreement carried a vacation provision as follows —

> All employees covered by this Agreement shall be granted a vacation with pay in each calendar year, *provided they are in the active service of the Company at the time the vacation is taken,* and have met the following requirements.
>
> For those employees who have been in the continuous service of the Company for more than one year, the length of vacation shall be one week; for those employees who have been in the continuous service of the Company for more than three years, the length of vacation shall be two weeks; for those employees who have been in the continuous service of the Company for more than ten years, the length of vacation shall be three weeks; for those employees who have been in the continuous service of the Company for more than twenty-five years, the length of vacation shall be four weeks. The period of continuous service shall be computed from the last hiring date of each employee. Continuity of service shall not be affected by layoffs due to intermittent plant operations or loss of time due to sickness.
>
> Vacation pay shall be based on a forty hour week at each employee's regular occupational rate, with the exception that in the case of contract workers, the vacation pay shall be based on the average weekly earnings during the preceding calendar year. *The Management shall designate the vacation period and the number of men on vacation at one time.* Management in designating the vacation periods will give consideration first to plant operating requirements and then to seniority. (Italics added.)

There is also a provision in the contract (article 17) which provides for the "Handling of Complaints." This gives the employee full rights to have any complaint or grievance heard by management and, if there is no satisfaction, a remedy through arbitration is provided. To involve this procedure the employee must give notice of his grievance in writing.

The plaintiff had been employed by the defendant for over three years but he had been laid off from time to time in idle periods. Last spring, when he returned from a period of lay-off, he demanded a vacation commencing the following week. The company refused to grant the request and he gave notice that he would terminate his employment with the company at the end of the week.

The plaintiff's claim must fail and the court has directed a verdict for the defendant on two equally important and effective grounds.

First, the claim fails because the company retains the power to designate the time of the vacation. The plaintiff, as an employee, was entitled to a vacation during the calendar year but only if he continued in the employment. He was entitled to the two weeks, and if he had continued working for the defendant he would have obtained those two weeks. To give an example — John Smith tells the company on Monday or Tuesday, "I am going to quit, I want my vacation now." He, in effect, is dictating to the company when he shall have his vacation. That is not what the contract provides. It states that *the company* shall designate the vacation period.

Warford was not entitled to tell the employer that he was leaving the following week and that he wanted his vacation — the company may have very well needed his services the following week. This would, in effect, amount to an employee designation of the vacation period, contrary to the contract.

In addition, the contract provides that all employees covered by the agreement should be granted a vacation provided that they are *in active service* of the company. Now, if a man quits on Friday at five o'clock, at 5:01 he is no longer in active service of the company, and is not entitled to vacation pay.

The second and equally important point requiring a directed verdict for the defendant is the failure of the plaintiff to carry out the grievance procedure provided by the contract. The arbitration procedure is available to all employees who have any grievance and the plaintiff did not carry through with this procedure.

Analogous to the remedies available in this instance are the administrative remedies provided by the various government agencies. These must, of course, be exhausted as a condition precedent to an action for relief in the courts. De Carlo v. Town of West Miami, 49 So.2d 596 (Fla. 1950); Morrison v. Plotkin, 77 So.2d 254 (Fla. 1955).

More in point are the cases where a contract remedy exists and several recent cases bear on this topic. National Airlines, Inc. v. Air Line Pilots Association, International, 154 So.2d 843 (Fla. App.3d 1963) ; Jacksonville Roofing and Sheet Metal Contractors Ass'n. v. Local Union No. 435, Sheet Metal Workers' Int'l., 156 So.2d 416 (Fla. App.1st 1963) ; National Airlines, Inc. v. Metcalf, 114 So.2d 229 (Fla. App.3d 1959).

It is therefore the court's opinion that there was an obligation and a binding contract between the employee and the company, and that before a suit may be filed the employee must exhaust certain procedures. These rules are there because if they were not, five thousand people could all walk out on the job and file five thousand different lawsuits. He was a union member, and was bound by the terms and conditions of the contract.

It is therefore, ordered and adjudged that the defendant's motion for a directed verdict is granted, and judgment is entered for the defendant, Lehigh Portland Cement Co.