378 So.2d 20 (1979)
CITY OF MIAMI, a Municipal Corporation, Paul Andrews and Garland Watkins, Appellants,
v.
FRATERNAL ORDER OF POLICE LODGE NO. 20 OF the CITY OF MIAMI, a Labor Organization; Robert Edmunds and Ernesto Ruiz, Appellees.
FRATERNAL ORDER OF POLICE LODGE NO. 20 OF the CITY OF MIAMI, a Labor Organization; Robert Edmunds and Ernesto Ruiz, Appellants,
v.
CITY OF MIAMI, a Municipal Corporation; Paul Andrews and Garland Watkins, Appellees.
Nos. 79-517, 79-491.
District Court of Appeal of Florida, Third District.
November 27, 1979.
Rehearing Denied January 8, 1980.
*21 George F. Knox, City Atty., and Nestor Cruz, Asst. City Atty., Seyfarth, Shaw, Fairweather & Geraldson and Peter J. Hurtgen, Miami, for City of Miami.
Weinsoff & Weinsoff and Irving Weinsoff, Miami, for Fraternal Order of Police, Lodge No. 20, Robert Edmunds and Ernesto Ruiz.
Before HENDRY, HUBBART and SCHWARTZ, JJ.
SCHWARTZ, Judge.
Edmunds and Ruiz were probationary police offices of the City of Miami when they were summarily discharged in 1975. There is no question but that, as probationers, they could be lawfully fired without cause and without assignment of reasons. Both officers, however, insisted to their superiors in the department that they were entitled to a pre-termination advisory hearing before the Departmental Disciplinary Review Board (DDRB), a panel established by a collective bargaining agreement between the city and the Fraternal Order of Police (F.O.P.), which represented both Edmunds and Ruiz.[1] However, the acting chief of police and an assistant chief emphatically expressed to both men the department's position that the agreement did not afford such a right to probationary officers and refused to grant them DDRB hearings.
Without pursuing any of the grievance and arbitration procedures provided in the contract itself for the resolution of any disputes "arising out of the interpretation or application of this agreement,"[2] the *22 F.O.P., Edmunds and Ruiz, sued the city in the Dade County Circuit Court. The F.O.P. sought a declaratory judgment that all probationers were entitled to DDRB hearings *23 prior to being disciplined; Edmunds and Ruiz each individually claimed the right to reinstatement and back pay, or, in the alternative, money damages because each had not been afforded such a hearing before his discharge.[3] After a non-jury trial, each was granted a money judgment against the city. The trial judge based this ruling on the grounds that (a) while a DDRB hearing was not required for probationers by the terms of the agreement itself, the city had "waived" or was estopped from making this claim by having granted such hearings to probationary personnel in prior cases; and (b) that the officers were entitled to damages for having been fired without such hearings, notwithstanding the city's admitted right to discharge them for any reason and at will. The lower court also rejected the city's contention that the action could not be maintained because of the plaintiffs' failure to exhaust the "administrative" remedies contained in the agreement, upon the finding
"that the City is further estopped from asserting that the Plaintiffs Ruiz and Edmunds failed to exhaust their administrative remedies under the Agreement and they had a right to rely on their supervisor's instructions to the effect that they had no right to a hearing."
We find that the lower court erred in its determinations that the city was estopped from asserting the defense and thus that the action was not barred by the plaintiffs' failure to invoke the grievance procedures provided in the contract in question. We therefore reverse the judgment below.[4]
No principle is more firmly established than the requirement that, before resorting to the courts, one must pursue and exhaust any extrajudicial or administrative remedy which may provide the relief sought. DeCarlo v. Town of West Miami, 49 So.2d 596 (Fla. 1950); Kaufman v. Machiedo, 357 So.2d 739 (Fla. 3d DCA 1978), cert. denied. 364 So.2d 888 (Fla. 1978); General Electric Credit Corp. of Georgia v. Metropolitan Dade County, 346 So.2d 1049 (Fla. 3d DCA 1977); 1 Fla.Jur.2d Administrative Law, § 47 (1977). This doctrine finds frequent application in cases which allege the breach of a contract which itself provides for a means, typically through arbitration, in which such disputes are to be resolved. Cf., e.g., Oakdale Park, Ltd. v. Byrd, 346 So.2d 648 (Fla. 1st DCA 1977); Bohlmann v. Allstate Ins. Co., 171 So.2d 23 (Fla. 2d DCA 1965); Sections 682.01 et seq., Fla. Stat. (1977). Even more specifically, these cases  which often also involve the correlative principle that a decision rendered through the method chosen by the parties to settle their contractual disputes is deemed final and binding  apply the exhaustion doctrine to the interpretation of collective bargaining agreements such as the one involved in this case. See Koenig v. Tyler, 360 So.2d 104 (Fla. 3d DCA 1978); Fredericks v. School Board of Monroe County, 307 So.2d 463 (Fla. 3d DCA 1975); Heath v. Central Truck Lines, Inc., 195 So.2d 588 (Fla. 1st DCA 1967); Jacksonville Roofing & Sheet Metal Contractors Association v. Local 435, Sheet Metal Workers' Int'l. Assoc. of Jacksonville, 156 So.2d 416 (Fla. 1st DCA 1963); cf. Public Employees Relation Commission v. District School Board of DeSoto County, 374 So.2d 1005 (Fla. 2d DCA 1979); Lake County Education Assn. v. School Board of Lake County, 360 So.2d 1280 (Fla. 2d DCA 1978), cert. denied, 366 So.2d 882 (Fla. 1978).
By far the most influential and important cases which so hold are those rendered by the Supreme Court in the so-called "Steelworkers Trilogy," United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., *24 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1338, 4 L.Ed.2d 1424 (1960), and the subsequent decisions in Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)[5] and Andrews v. Louisville & N.R. Co., 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In these decisions, the high court applied the statutorily expressed federal policy, as contained both in the Labor Management Relations Act, see 29 U.S.C. § 173 (d) (1970), and (in the case of the Andrews opinion) in the Railway Labor Act, 45 U.S.C. § 153 First (i) (1970), to require that actions for breach of collective bargaining agreements governed by those laws may not be maintained unless the complaining employee, or his union, first attempts and exhausts the "use of the contract grievance procedure agreed upon by employer and union as the mode of redress." Republic Steel Corp. v. Maddox, supra, 379 U.S. at 652, 85 S.Ct. at 616, 13 L.Ed.2d at 583. Particularly since the Florida Public Employees Relations Act, which governs the agreement before us, similarly requires the inclusion of a grievance procedure which terminates in final and binding arbitration, Sec. 447.401, Fla. Stat. (1977), we hold that these principles as enunciated by the Supreme Court are directly applicable to this case.
That determination requires reversal. There is no doubt that (a) the dispute involved over whether Edmunds, Ruiz and other probationers were entitled to DDRB hearings was one "arising out of the interpretation or application" of the agreement and was therefore subject to the grievance-arbitration procedure provided by the contract itself[6] and that (b) the procedure was not invoked in any way either by the individuals or by the union acting on its own or on their behalf.[7] The plaintiffs' failure to do so precludes the present action.[8]
We do not agree with the determination below that under the circumstances disclosed in the record the city became estopped to raise the exhaustion defense. The plaintiffs argue, and the trial judge, by stating that "they had a right to rely upon their supervisor's instructions ... that they had no right to a hearing," apparently found that the city officials in question had repudiated the grievance procedure *25 and therefore could not contend that the plaintiffs were required to pursue it. While the principle thus invoked is a well-recognized one, see Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870 (3d Cir.1972), it does not apply to this case. It is true that their superiors told Edmunds and Ruiz in no uncertain terms that they had no right to a DDRB hearing and that, since they were probationers, they "had no grievance" because they were fired without one. But these statements were no more than expressions of the employer's position on the merits of the issue in contention, concerning which the F.O.P., Edmunds and Ruiz obviously held the opposite view. At no time, did any representative of the city indicate that it would not submit the issue of who was right in that controversy to the grievance-arbitration procedure or would not abide by the resulting decision. Compare Vaca v. Sipes, supra. It would be a strange doctrine indeed under which an employee could relieve himself of engaging in the grievance process merely by supinely accepting an adverse decision of his employer as unchallengeable  until the filing of an action in court. Such a rule would render the exhaustion principle itself entirely meaningless. That this is not the case is well-expressed in two recent decisions on the precise point. In Rabalais v. Dresser Industries, Inc., 566 F.2d 518, 520 (5th Cir.1978), the court held:
The employer participated in the first three stages of the grievance process. At that point neither the employer nor the union sought the final step, arbitration. Rabalais argues that there was a repudiation because the employer did not consider the claim a proper subject of a grievance. This argument, however, clearly confuses repudiation of the grievance procedure and a refusal to accept an employee's position with respect to a grievance. An employer can obviously take a stance contrary to that of the employee during the grievance process without being deemed to have repudiated that process. [e.s.]
Similarly, the following appears in Robbins v. George W. Prescott Publishing Co., Inc., 457 F. Supp. 915, 921 (D.Mass. 1978):
Analytically and temporally, acts by an employer which are alleged to be substantive breaches of a bargaining agreement  here the cease-and-desist order, the demotion, the discharge, and the failure to send a copy of the order to the Association  cannot also serve as anti-remedial acts constituting employer repudiation of the grievance and arbitration procedure established for the resolution of those earlier substantive breaches. See Rabalais v. Dresser Industries, Inc., supra, [566 F.2d] at 520. To hold otherwise would allow the repudiation exception to swallow whole the exhaustion requirement, since underlying substantive claims of breach of contract will always be at issue in § 301 cases.
* * * * * *
Robbins' argument, which could be echoed by almost every § 301 plaintiff, that he is excused from resolving his claims through available contractual procedures because the Company has neither rescinded its actions, reinstated him, nor conceded that it had violated the contract, in no way establishes ignorance, obstruction or repudiation of the contract's remedial procedures by the Company. Those stances by the employer are simply consistent with the Company's position that Robbins was properly discharged.
Accord, Miller v. Local 50, American Federation of Grain Millers, 468 F. Supp. 193, 200 (D.Neb. 1979) ("Even if the company acted improperly in declining to address Miller's grievance on the merits, the avenue to arbitration remained unobstructed.")
For three reasons, we likewise reject the argument that Miami should be estopped to claim that each officer should have pursued a grievance, because, by firing and ordering him off city premises, the city rendered it impossible to "discuss the grievance with his immediate supervisor within five (5) working days of the occurrence which gave rise to the grievance," as *26 stated in "Step 1" of the procedure outlined in Artice IX(4) of the agreement:[9]
(1) There is no evidence that the F.O.P. or either Edmunds or Ruiz was prevented from contacting the supervisor in question, the respective officer's sergeant, so as to comply with this provision. Compare Stroman v. Atchison, Topeka & Santa Fe R. Co., 161 Cal. App.2d 151, 326 P.2d 155, 164 (1958); cf. Paul v. Blake, 376 So.2d 256 (Fla. 3d DCA 1979).
(2) As to the issue involved in this case, no such discussion was even required since the contract itself provides:
"Where a grievance is general in nature in that it applies to a number of employees having the same issue to be decided, or if the grievance is directly between the Fraternal Order of Police and the City, it shall be presented directly at Step 2 of the grievance procedure, within the time limits provided for the submission of a grievance in Step 1, and signed by the aggrieved employees of the Fraternal Order of Police representative on their behalf."
(3) Any issue concerning an excuse for a failure to engage in any part of the grievance procedure was itself properly subject only to arbitration. See Local 616, International Union of Electrical, Radio and Machine Workers, AFL-CIO v. Byrd Plastics, Inc., 428 F.2d 23 (3d Cir.1970).
For these reasons, the judgment under review is reversed and the cause remanded with directions to dismiss the complaint.
Reversed and remanded.
NOTES
[1] XVIII
DEPARTMENTAL DISCIPLINARY REVIEW BOARD
No employee shall be dismissed, demoted, fined, suffer a forfeiture of time or be suspended without a hearing prior to such action. There shall be established a Departmental Disciplinary Review Board for the purpose of such hearings. Said Board shall be composed of five (5) members of the Department, two (2) selected by the Department Head and (3) selected by the employee from a standing list. The list shall be a cross-section of rank and units within the Department. The Board's decision will be advisory and not binding on the Department. The employee shall be entitled to representation by an employee of his choice and shall be permitted to examine witnesses, to present evidence and testimony, to cross-examine, and to put on a defense. If the decision of the Board or the Department Head is unsatisfactory to the employee, he may appeal this decision to the Civil Service Board.
It is agreed that the convening of the Departmental Disciplinary Review Board shall be effectuated as expeditiously as possible following charges, being levied against the accused employee. Should the accused employee request to continue a hearing or delay its convening, then it is agreed that the employee waives his emoluments in exchange for the continuance of the hearing.
Any decisions by the Departmental Disciplinary Review Board or any policies established by the Departmental Disciplinary Review Board are not arbitrable under this collective bargaining agreement.
[2] IX
GRIEVANCE PROCEDURE
1. In a mutual effort to provide harmonious working relations between the parties of this Agreement, it is agreed to and understood by both parties that there shall be a procedure for the resolution of grievances or misunderstandings between the parties arising from the application or interpretation of this Agreement.
2. A `Grievance' shall be defined as any dispute that an employee or the Fraternal Order of Police may have arising out of the interpretation or application of the terms of this Agreement.
3. To simplify the grievance procedure, the number of `working days' in presenting a grievance and receiving a reply from the different levels of supervision shall be based upon a forty (40) hour, five (5) day work week, Monday through Friday.
4. Grievances shall be processed in accordance with the following procedure:
Step 1.
The aggrieved employee shall discuss the grievance with his immediate supervisor within five (5) working days of the occurrence which gave rise to the grievance. The Fraternal Order of Police representative may be present to represent the employee if the employee desires him present. The immediate supervisor shall attempt to adjust the matter and/or respond to the employee within five (5) working days. Where a grievance is general in nature in that it applies to a number of employees having the same issue to be decided, or if the grievance is directly between the Fraternal Order of Police and the City, it shall be presented directly at Step 2 of the grievance procedure, within the time limits provided for the submission of a grievance in Step 1, and signed by the aggrieved employees of the Fraternal Order of Police representative on their behalf. All grievances must be processed within the time limits herein provided unless extended by mutual agreement in writing.
Step 2.
If the grievance has not been satisfactorily resolved, the Fraternal Order of Police representative shall reduce the grievance to writing on the standard form provided for this purpose and present such written grievance to the Division Head concerned within three (3) working days from the time the response was due in Step 1. The Division Head concerned shall meet with the Fraternal Order of Police representative and shall respond to the Fraternal Order of Police in writing within three (3) working days from the receipt of the written grievance.
Step 3.
If the grievance has not been satisfactorily resolved in Step 2, the Fraternal Order of Police may present a written appeal to the Department Head within seven (7) working days from the time the response was due in Step 2. The Department Head or his designee shall meet with the Fraternal Order of Police representative and shall respond in writing to the Fraternal Order of Police within seven (7) working days from receipt of the appeal. Any grievance not processed in accordance with the time limits provided above shall be considered conclusively abandoned. Any grievance not answered by Management within the time limits provided above will automatically advance to the next higher step of the grievance procedure.
Step 4.
If the grievance has not been satisfactorily resolved in Step 3, the Fraternal Order of Police may present a written appeal to the City Manager within seven (7) working days from the time the response was due in Step 3. The City Manager or his designee shall meet with the Fraternal Order of Police representative and he shall respond in writing to the Fraternal Order of Police within ten (10) working days from the receipt of appeal.
* * * * * *
ARTICLE X
ARBITRATION
1. If the grievance has not been satisfactorily resolved within the grievance procedure, the Employee Organization may request a review by an impartial arbitrator provided such request is filed in writing with the City Manager no later than fifteen (15) working days after the City Manager's response is due in Step 4, of the grievance procedure.
2. The parties to this Agreement will attempt to mutually agree upon an independent arbitrator. If this cannot be done, one will be selected from a panel or panels to be submitted by the American Arbitration Association.
3. The arbitration shall be conducted under the rules set forth in this Agreement and not under the rules of the American Arbitration Association. Subject to the following, the arbitrator shall have jurisdiction and authority to decide a grievance as defined in this Agreement. The arbitrator shall have no authority to change, amend, add to, subtract from or otherwise alter or supplement this Agreement or any part thereof or any amendment thereto. The arbitrator shall have no authority to consider or rule upon any matter which is stated in this Agreement not to be subject to arbitration or which is not a grievance as defined in this Agreement, or which is not covered by this Agreement; nor shall this collective bargaining agreement be construed by an arbitrator to supersede any applicable laws.
4. The arbitrator may not issue declaratory or advisory opinions and shall confine himself exclusively to the question which is presented to him, which question must be actual and existing.
5. It is contemplated that the City and the Employee Organization shall mutually agree in writing as to the statement of the matter to be arbitrated prior to a hearing; and if this is done, the arbitrator shall confine his decision to the particular matter thus specified.
6. Each party shall bear the expense of its own witnesses and of its own representatives. The parties shall bear equally the expense of the impartial arbitrator. The party desiring a transcript of the hearing will bear the cost of same.
7. Copies of the award of the arbitration made in accordance with the jurisdiction or authority under this Agreement shall be furnished to both parties within thirty (30) days of the hearing and shall be final and binding on both parties.
[3] We have considered the propriety of various pre-trial rulings in the case in City of Miami v. Fraternal Order of Police, 346 So.2d 100 (Fla. 3d DCA 1977), and City of Miami v. Fraternal Order of Police, 351 So.2d 84 (Fla. 3d DCA 1977).
[4] Our ruling to this effect makes it unnecessary to consider either the numerous other grounds for reversal asserted by the city, or the plaintiffs' separate appeal which claims primarily that the relief awarded them below was inadequate.
[5] Cited with approval and followed in Heath v. Central Truck Lines, Inc., supra.
[6] See note 2, supra.
[7] There was evidence that the F.O.P. did not file a grievance in the Edmunds case because it thought it would have been untimely (an issue itself subject to arbitration, 48A Am.Jur.2d Labor and Labor Relations § 1857 (1979); cf. Public Employee Relations Commission v. District School Board, supra, at 374 So.2d 1015), and that it decided instead to go directly to court in order to resolve the issue on his behalf, and, later, on Ruiz's. There is, of course, no claim that this decision by the union, however ill-advised, constituted a breach of its duty of fair representation which would excuse the failure of the individuals to pursue the grievance procedure under the exception to the exhaustion doctrine established in Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); see 48A Am.Jur.2d Labor and Labor Relations § 1936 (1979), and cases cited.
[8] In Scott v. National Airlines, Inc., 150 So.2d 237 (Fla. 1963) and Mountain v. National Airlines, 75 So.2d 574 (Fla. 1954), our supreme court held that, under collective bargaining agreements governed by the Railway Labor Act, a discharged employee could, at his option, either accept his dismissal as final and sue for money damages or invoke the grievance procedure in order to secure reinstatement. These cases have been overruled by Andrews v. Louisville v. N.R. Co., supra. Even if they had not, the exhaustion principle would nonetheless apply to Edmunds and Ruiz because both claimed below, and in their cross-appeal still maintain, that they should be reinstated with back pay.

Moreover, it seems clear that, by virtue of the agreement, the arbitrator would have full power to make any award, including one for money damages, which he found appropriate under the circumstances. Utility Laundry Service, Inc. v. Sklar, 300 N.Y. 255, 90 N.E.2d 178 (1949); 48A Am.Jur.2d, Labor and Labor Relations § 1851 (1979) and cases cited. Thus, the plaintiffs may not invoke the principle that the exhaustion doctrine does not apply when the administrative process can not grant the relief or remedies to which the complaining party may be entitled. See Northeast Airlines, Inc. v. Weiss, 113 So.2d 884 (Fla. 3d DCA 1959), cert. denied, 116 So.2d 772 (Fla. 1959).
[9] See note 2, supra.