Dorothy PETERSEN and Patricia Young-
blut, Appellees,

v.

The RATH PACKING COMPANY, United
Packinghouse Food and Allied Work-
ers, A.F.L.-C.I.O., Local No. 46, Appel-
lants.

Dorothy PETERSEN and Patricia Young-
blut, Appellees,

v.

The RATH PACKING COMPANY, United
Packinghouse Food and Allied Work-
ers, A.F.L.-C.I.O., Local No. 46, Appel-
lants.

Dorothy PETERSEN and Patricia Young-
blut, Appellants,

v.

The RATH PACKING COMPANY and
United Packinghouse Food and Allied
Workers, A.F.L.-C.I.O., Local No. 46,
Appellees.

Nos. 71-1364, 71-1413, and 71-1430.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1972.

Decided June 7, 1972.

Steven A. Weidner, Swisher & Cohrt,
Waterloo, Iowa, for Rath Packing Co.

Robert D. Fulton, Fulton, Frerichs, Nutting & Kennedy, Waterloo, Iowa, for United Packinghouse Food and Allied Workers, A.F.L.–C.I.O., Local No. 46.

David J. Dutton, Mosier, Thomas, Beatty, Dutton & Braun, Waterloo, Iowa, for Dorothy Petersen and Patricia Youngblut.

Before Mr. Justice CLARK,* VOGEL and LAY, Circuit Judges.

LAY, Circuit Judge.

Two women employees sought relief against the Rath Packing Company and the United Packinghouse, Food and Allied Workers, A.F.L.–C.I.O., Local No. 46, under § 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a), arising out of the Company's alleged breach of a collective bargaining agreement. Their claims were that the Company failed to reclassify certain jobs to be equally available for women as for men. Alternatively, plaintiffs urge that the contract required the Company, because of their seniority and individual qualifications, to assign the plaintiffs to the jobs in question. Their claim against the Union arises for its alleged failure to adequately process plaintiff's grievances against the Company. Both plaintiffs, Dorothy Petersen and Patricia Youngblut, were union members and employees of the Company at its Waterloo, Iowa, plant for many years. The trial court entered judgments for the plaintiffs.[1] Both the Company and the Union have appealed.

Both the Company and the Union assert that the trial court was without jurisdiction by reason of plaintiffs' failure to fully exhaust their grievance remedies. They both additionally urge that there was insufficient evidence to demonstrate a breach of the collective bargaining agreement. The Union separately claims that there was no evidence that it violated its duty of fair representation. Plaintiffs cross-appealed on the trial court's denial of an award of attorney fees. We affirm the judgments of the district court.

As an aftermath to the passage of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Rath Packing Company and the Union amended their collective bargaining agreement to provide for equal job opportunity for women and men. The agreement retained job classifications but also created a new category of jobs which both men and women could perform. Male jobs were in the "A" category, female jobs in the "B" category and jobs which both sexes could perform were in a "C" category. This became known as the "ABC" agreement. The agreement stated that if any woman was to be laid off, she could seek any job held by someone else with less seniority, provided the Company considered her able as an individual to perform the job or learn it within a reasonable time.

In the spring of 1967 plaintiffs and another woman were informed of impending layoffs. They applied to the Company to be moved to three "A" jobs in the employee cafeteria. These jobs were first and second cook and baker. At that time they were held by three men with less seniority than the plaintiffs. Plaintiffs' request was in the form of a grievance which stated:

"Women in the Plant Cafeteria are protesting the Company and the Union's position on layoffs. Plant and department rights are being violated by allowing men with less seniority to

* The Honorable Tom C. Clark, Associate Justice of the United States Supreme Court, Retired, sitting by special designation.

1. Money judgments were entered for both plaintiffs compensating them for their loss of wages and vacation pay. The court also ordered that the Company appropriately adjust the employees pension records. After their layoff the plaintiffs were rehired as new employees without departmental seniority.

perform jobs that can be performed by both sexes. These jobs have been performed by women in the past. By doing this, Company and Union are in violation of the Equal Rights Opportunity law."

At the first step of the contractual grievance procedure plaintiffs were represented by a Union departmental steward. The Company responded that the jobs were properly classified. On the second grievance step the Union divisional steward presented their claims to Company representatives who then agreed to review all "A" and "B" job *classifications* in the cafeteria. However, when the Company failed to act, plaintiffs sought to have the Union's chief steward, Charles Mueller, take their grievance a third step. Mueller refused to do so stating that he opposed their efforts to take the "A" jobs. Plaintiffs, pursuant to the Union by-laws, appealed Mueller's decision to the Union bargaining committee, which was composed of all men. Upon review, the bargaining committee decided that a woman was not capable of doing the "A" jobs in the cafeteria. Plaintiffs then appealed to the Union executive committee. Its subcommittee composed of two men and two women split 2–2; however, the overall executive committee vote was 5–3 in favor of keeping the jobs in the "A" category. Plaintiffs did not submit their grievance to the overall rank and file membership, nor did they accept the Union's offer to submit the dispute to an arbitrator.[2] This suit thereafter ensued.

Defendants assert that the plaintiffs failed to exhaust their contractual remedies because their grievance did not object to the Company's refusal to transfer them to "A" jobs, and they failed to exhaust their intra-Union remedies as to having the jobs reclassified by not appealing to the rank and file membership.

It is a settled principle that no action can be brought under 29 U.S.C. § 185(a) until a party attempts to exhaust his contractual remedies as to any claim. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L. Ed.2d 580 (1965); Woody v. Sterling Aluminum Products, Inc., 365 F.2d 448 (8 Cir. 1966), cert. denied, 386 U.S. 957, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967). The purpose of the exhaustion requirement is to utilize the *contract grievance procedure* in the collective bargaining contract as an initial method of settling disputes. See Republic Steel Corp. v. Maddox, supra. Nevertheless when a good faith attempt to present a grievance is made and the Union decides not to further represent the individuals, the law relieves a party of his responsibility to further exhaust contractual remedies. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Under the terms of the collective bargaining contract only the Union could process the plaintiffs-employees grievance. Once the Union refused to act, plaintiffs had no remedy against the Company except to file this lawsuit. The *contractual grievance procedure* was exercised as far as plaintiffs could utilize it. The Company cannot urge that the plaintiffs should have further appealed the Union's refusal to process the grievance to the rank and file membership since there is no such requirement within the collective bargaining agreement. The question of exhaustion of internal Union procedures is the Union's concern, not the Company's.

Even assuming *arguendo* that the Company could challenge an employee's § 301(a) suit with such a defense, the challenge made by the Union and joined in by the Company fails. There was substantial proof both in the wording of the grievance itself and in the testimony of Company and Union of-

---

2. Arbitration was not mandatory under the collective bargaining contract.

ficials, that plaintiffs did give notice to the defendants of their wishes to be assigned to the "A" jobs regardless of reclassification. The trial court may look at all the facts and circumstances of each case in determining whether or not a grievance adequately sets forth the claims relied upon. The wording of the grievance should be liberally construed; courts should not pass upon the technical competence with which a worker presents his grievance. See McCraw v. United Association of Journeymen, 341 F.2d 705, 711 (6 Cir. 1965). The Supreme Court has recognized that in grievance proceedings "courts should impose a heavy burden on the union to show that it could not in any way discern that a member was complaining of the violation in question" before barring a claimant. See Hodgson v. Local 6799, United Steelworkers of America AFL–CIO, 403 U.S. 333, 91 S.Ct. 1841, 1846, 29 L.Ed.2d 510 (1971). We find that the grievance filed was broad enough to give both the Union and the Company notice that the women desired a transfer to the "A" jobs as well as desiring to have such jobs reclassified. Moreover, there was evidence that the Union's chief steward, Mueller, as well as the plant's personnel manager, Heise, both admittedly understood that the women were requesting transfers to the "A" cafeteria jobs.

Resort to the rank and file under the intra-union appeal procedure presented an unlikely relief for the plaintiffs. The numerical superiority of men over women at the plant (1,958 to 482), the fact that the issue raised the vulnerability of the men in the "A" jobs and the opposition of the Union's higher echelon to the women employees' request all demonstrate that placing the question before the rank and file would have been a losing gesture. National Labor Relations Board v. Industrial Union of Marine & Shipbuilding Workers of America, AFL–CIO, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).

■ The trial court found that the Union did not fairly represent the plaintiffs in wrongfully refusing to process their grievance. A good faith refusal of a union to process a grievance is not a basis for union liability in a § 301(a) suit. Vaca v. Sipes, supra. However, where the union's refusal to represent its member results from its wrongful participation in the breach of contract, then damages may be apportioned to the union to the extent that it shares responsibility for the whole damage. Vaca v. Sipes, supra; Richardson v. Communications Workers of America, 443 F.2d 974 (8 Cir. 1971). In the instant case the Union claims it did nothing wrong, but merely disagreed in good faith with the plaintiffs' interpretation of their rights under the ABC agreement. See Ford Motor Co. v. Huffman, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Harris v. Chemical Leaman Tank Lines, Inc., 437 F.2d 167 (5 Cir. 1971). The record belies this claim. There exists proof here of Union adherence to a policy of never transferring a woman to an "A" job regardless of her individual capabilities. Two chief stewards testified that the policy was absolute. One chief steward also admitted that he thought that such a transfer to the "A" jobs would produce a bad result so he initially decided not to tell plaintiffs that they had the right under the ABC agreement to request assignment to "A" jobs as an alternative to layoff. Under such circumstances we cannot hold that the trial court's finding of bad faith was clearly erroneous.

■ The trial court found that the company had breached the ABC agreement. The agreement specifies that when an employee requests assignment to a job in a different classification, that the Company would "consider the individual qualifications of such employee. . . ." The Company failed

to do this. The plant personnel manager testified that the Company had taken a "general stand" that it was not in the nature of the work that "a normal woman could do." The personnel manager conceded that although he knew that these women had performed elements of the same "A" jobs in the past, he did not actually test them to determine if they could perform the totality of the job.[3] We deem the evidence conclusive that the Company did not consider individual transfers since it had viewed the question as whether "A" jobs should be reclassified to the "C" category, and that depended on whether an average woman could do them. There was ample evidence that the plaintiffs were strong enough to have performed these jobs adequately and a test of their individual capabilities would have verified this conclusion. Thus, once again the trial court's finding cannot be held to be clearly erroneous.

A cross-appeal has been filed by the plaintiffs seeking attorney fees. The trial court found that the motion to amend for attorney fees and costs was made more than ten days after entry of judgment and since it was not timely it could not be entertained by the court.[4] Alternatively, the court in its discretion found that the plaintiffs were not entitled to attorney fees. We need not pass on the discretionary denial of fees or on whether plaintiffs are even entitled to attorneys' fees in a § 301 suit. We affirm the trial court's finding that the motion for attorney fees was not made within ten days after entry of judgment. Fed.R.Civ.P. 52(b).

Judgments affirmed.

3. The plant manager testified:
"One of these ladies here today, I know, has done a lot of hard work by nature of her background and it made it rather difficult to say that she could or could not do it, but we took the general stand that it was not the nature of the work that a normal woman could do, and therefore, did not put any women on these jobs."

4. The plaintiffs first moved the court for attorney fees in a motion to amend the findings of fact and conclusions of law on May 6, 1971. The judgment of the court was entered on April 16, 1971.