Donald J. FLEMING, Plaintiff,

v.

CHRYSLER CORPORATION, a Foreign Corporation, and United Auto Workers of America, Local 412, jointly and severally, Defendants.

Civ. A. 5–72290.

United States District Court,
E. D. Michigan, S. D.

Nov. 21, 1975.

William D. Haynes, Haynes & Donnelly, P. C., Detroit, Mich., for plaintiff.

William S. Hurst, Edwin G. Fabre, Detroit, Mich., for defendants.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

KAESS, District Judge.

Plaintiff Donald J. Fleming has brought an action against Chrysler Corporation for breach of contract and against United Auto Workers of America, Local 412, for failure to fairly represent him. Jurisdiction is invoked under Title III, Section 301, of the Labor Management Relations Act. Both Chrysler Corporation and United Auto Workers of America, Local 412, bring motions for summary judgment.

The facts underlying the complaint are as follows. Plaintiff began employment with Defendant Chrysler Corporation (hereinafter "Chrysler") in 1949. Plaintiff claims

that, beginning in 1970, he became subjected to increasing harassment from his supervisors. He filed a number of grievances with his union steward, which he claims have not been resolved. In November, 1974, all estimators of Unit 11, Local 412, including plaintiff, were laid off by Chrysler. This lay-off involved four separate groups: Body, chassis, competitive, and truck estimating. The truck estimating group was at that time under separate UAW contract. Defendant Chrysler merged these groups, and proceeded to lay off by straight seniority of the merged groups. Plaintiff alleges that this action was in violation of the Union contract, Section 56.

Although a civil suit by the Union Local was threatened on this matter, agreement was reached during August, 1975, between the UAW and Chrysler, that two truck estimators would be laid off and that four passenger car estimators would be recalled.

On February 12, 1975, plaintiff was notified by Defendant Chrysler that his lay-off status was being changed to permanent, whereupon plaintiff went to the office to clean out his desk and remove personal belongings. While clearing his desk, words were exchanged with plaintiff's supervisor, and after plaintiff left the office, certain important work papers were discovered torn in half in his wastebasket. Defendant Chrysler discharged plaintiff on the grounds of sabotage, thus terminating his recall rights and certain benefits. A grievance was filed by plaintiff, and the Union took this grievance to the Appeal Board. On July 8, 1975, a decision was rendered by the Impartial Chairman, who concluded that the plaintiff herein had been guilty of careless, but not deliberate, destruction of documents. All seniority rights were reinstated; however, reimbursement for lost time was denied.

Plaintiff alleges that the failure of Defendant UAW to process his grievance further and to notify him of its action resulted in the loss of interim benefits. Plaintiff further alleges that the action of Defendant Chrysler in discharging him on the grounds of sabotage resulted in his loss of seniority rights for a period of five and one-half months.

The Defendant Union brings its Motion for Summary Judgment on the ground that the facts do not support a cause of action, and that, as a matter of law, it is entitled to summary judgment. Rule 56, Federal Rules of Civil Procedure.

■ In order for a union to be held liable to an aggrieved member for breach of the duty of fair representation, it must be shown that the union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). This standard was recently reaffirmed in *Amalgamated Association of Street, Electric Ry. & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), wherein the court stated, at page 299, 91 S.Ct. at page 1924,

> For such a claim to be made out, Lockridge must have proved "arbitrary or bad-faith conduct on the part of the Union." There must be "substantial evidence of fraud, deceitful action or dishonest conduct." Whether these requisite elements have been proved is a matter of federal law. (Citations omitted).

The issue of what constitutes a breach of the duty of fair representation has been presented to the Sixth Circuit on several occasions. In *Balowski v. UAW*, 372 F.2d 829 (6th Cir. 1967), the Court of Appeals held that in order to maintain a cause of action, the plaintiff must show that the Union's conduct was motivated by bad faith, hostility, or discrimination. At page 834, the court said

> An action will not lie against a union for failure to process a grievance absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose or such gross mistake or inaction as to imply bad faith. *Williams v. Kroger Co.*, 369 F.2d 85 (C.A. 6), (1966).

■ There is no absolute right by a union member to have his grievance arbitrated.

*Vaca v. Sipes, supra.* A union has a "wide range of reasonableness" over grievances.

In *Balowski v. UAW, supra,* the court (quoting from *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370) stated, at page 834

> Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance procedure, so it must be free to take a position on the not so frivolous disputes. . . . To remove or gag the union in these cases would surely weaken the collective bargaining and grievance process.

Again, in *Dill v. Greyhound Corp.,* 435 F.2d 231 (6th Cir. 1970), the court reiterated that, in order to establish unfair representation, it would have been necessary for the plaintiff to establish by a preponderance of the evidence that the union had acted arbitrarily or in bad faith.

The most recent pronouncement from the Sixth Circuit came in *Ruzicka v. General Motors Corp.,* 523 F.2d 306 (1975). *Ruzicka* involved a suit by a discharged employee against his former employer and union. There was evidence before the court that the union had made no decision as to the merits of the employee's grievance, but merely allowed it to expire out of negligent and perfunctory handling. The court stated, at page 310

> We believe that the District Court misread *Vaca* when it held that 'bad faith' must be read into the separate and independent standards of 'arbitrary' or 'discriminatory' treatment. Union action which is arbitrary or discriminatory need not be motivated by bad faith to amount to unfair representation.

■ In the present case, there is no evidence that the Union acted in either an arbitrary or discriminatory manner in processing plaintiff's grievance. Fleming filed a grievance against Chrysler relating to his discharge on the grounds of sabotage. The Union brought this matter to arbitration, seeking full reinstatement and back pay. The decision, written by the Impartial Chairman, did put Mr. Fleming back to work, but refused to award him back pay or certain other benefits he had lost as the result of his discharge. Thus, the loss of interim benefits alleged in the complaint is directly traceable to the arbitration award, rather than the arbitrary or discriminatory acts of Defendant Union.

■ Displeasure with an arbitration decision does not elevate itself to a breach of the Union's duty to fairly represent plaintiff herein. As the court stated in *Provenzino v. Merchants Forwarding,* 363 F.Supp. 168 (E.D.Mich.1973)

> Complete satisfaction with the degree of representation union members receive before arbitration panels is hardly to be expected. The fair representation standard, however, deals not with the degree of satisfaction the union member received from his union representative, but with whether the union's conduct was "arbitrary, discriminatory or in bad faith." Situations amounting to nothing more than visceral reactions by parties adversely affected by arbitration panels do not violate the "fair representation" standard.

Defendant has also alleged that the Union has not resolved a number of other grievances. However, he has stated no facts in support of this allegation. Defendant Union's Exhibit 2 is the decision of the Appeal Board as to an earlier grievance filed by plaintiff. The Union was successful in having a disciplinary report written by plaintiff's supervisor withdrawn from his record. Therefore, this Court finds that the Union did not act in an arbitrary or discriminatory manner in processing plaintiff's grievance, nor did it act in bad faith.

The Union also argues that plaintiff's complaint should be dismissed because he has failed to exhaust his intra-union remedies. Specifically, the Union argues that Article 33 of the 1974 Constitution of the International Union, UAW, spells out the intra-union remedies available to an aggrieved member.

■ The general rule is that a prerequisite to suit under 29 U.S.C. § 185 for breach of the duty of fair representation is the

exhaustion of intra-union remedies. For example, in *Bsharah v. Eltra Corporation*, 394 F.2d 502 (6th Cir. 1968), plaintiff sued both her union and former employer, alleging a failure by the union to properly represent her. In affirming the District Court's granting of the union's motion for summary judgment, the Circuit Court stated, at page 503

In sustaining the union's motion for summary judgment, the court held that, assuming the International Union owed a duty to protect appellant, she failed to allege or show any attempt to initiate her intra-union remedies prescribed by the constitution and by-laws of the International Union and, in this holding, we concur.

■ The cases also indicate that a plaintiff must show that he has exhausted or attempted to exhaust his internal remedies against the union before he can proceed against it in court. In *Harrington v. Chrysler Corporation*, 303 F.Supp. 495 (E.D.Mich. 1969), plaintiff failed to completely exhaust his contract grievance procedure and his intra-union appeal procedure set forth in Article 32 of the UAW Constitution. The court stated

. . . plaintiff . . . sought redress only by means of the grievance machinery set forth in the local collective bargaining agreement between Local Union No. 412 and Chrysler Corporation. He did not avail himself of the intra-union appeal procedures to challenge Local 412's alleged arbitrary action in refusing to represent the plaintiff with respect to the grievance. The [UAW Const.] require[s] the aggrieved member to submit his appeal in writing within a specified time period . . . and . . . all remedies and appeals . . . [must] be exhausted prior to [resort to court]. Thus, based upon plaintiff['s] . . . failure to affirmatively show some action pursuant to the intra-union appellate procedures, this court is without authority to entertain the plaintiff's action. *Harrington, supra*, at p. 497.

*See also: Esquivel v. Air Conditioning Products and Local 157 UAW*, 82 LRRM 2001 (E.D.Mich.1972).

■ There appear to be three recognized exceptions to the rule requiring exhaustion of intra-union remedies:

1. A member is not limited to the exclusive remedial procedures established by the collective bargaining agreement when the conduct of his employer amounts to repudiation of those contractual procedures. *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

2. A member may bring suit when the union has the sole power under the contract to invoke the higher stages of the grievance procedure, and the member is prevented from exhausting his contractual remedies by the union's wrongful refusal to process a grievance. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842.

3. Finally, a member will not be required to exhaust his intra-union remedies where the effort to proceed formally with contractual or administrative remedies would be wholly futile. *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1968).

In the present case, the first exception clearly does not apply since there was no attempt on the part of either defendant to repudiate contractual procedures. The second exception also does not apply in this case since the appeal procedure available to plaintiff was not totally within the control of the Union.

■ Since plaintiff alleges that exhaustion of intra-union remedies would have been futile, this Court will summarize the procedures available to plaintiff here. Plaintiff's first appeal, from what he alleges was improper and discriminatory processing of his grievance, would have been to the membership of Local 412 UAW. The membership, Fleming's co-workers, could decide that he had been wronged and order the

Union to make him whole. Section 2 of Article 33 provides for a member to appeal from "any action, decision, or penalty" by the Union. Further, Section 4 of both the 1966 and 1968 Constitutions permits him to be represented by a person of his choice. Fleming chose not to seek relief or redress from his peers and co-workers.

At this time, no one knows how the members of Local 412 would have voted. Plaintiff has not presented any facts by way of affidavit or otherwise which would tend to establish that such an effort would have been futile. Moreover, even if the Local membership had denied plaintiff relief, there were further intra-union remedies available.

The International Executive Board, had plaintiff in fact appealed to it, could have granted him the relief which he now seeks before this Court. The authority of the International Executive Board to hear an appeal from an aggrieved member who has not been accorded the desired results from the Local membership is found in Sections 6 and 7 of Article 33.[1]

The International Executive Board has often reversed the decision of a subordinate body and given the aggrieved the relief he sought. The International Union Executive Board itself could give plaintiff monetary relief. *See: Pfeiffer v. Local 556, International Executive Board Appeals Committee* (1968). Plaintiff here chose not to utilize the International Executive Board procedures.

Plaintiff also had access to an independent Public Review Board. Few, if any, other labor organizations have a comparable body. The PRB is established by the Constitution of the UAW. If the plaintiff had been dissatisfied with the International Executive Board's ruling, he could have sought redress from the PRB. The decision of the PRB is binding on the union. Further, its members not only are esteemed persons, but they have no connection with the UAW, i. e., do not hold office, nor receive salaries therefrom.[2]

The Public Review Board has the power to grant to a UAW member, such as plaintiff, relief against defendant union as com-

---

1. "§ 6. Any member wishing to appeal from the action decision or penalty of his subordinate body shall do so in writing within thirty (30) days after the aforesaid action, decision or penalty. . . . The appeal shall set forth the basis upon which appeal . . . is taken. The International President shall secure from the subordinate body a complete statement of the matters in issue, including copies of all charges, and any records, minutes, transcripts of testimony, and other material relating to the appeal.

§ 7(a). The International Executive Board shall appoint a two (2) member committee to consider the appeal and make recommendations. This two (2) member committee shall be composed of members of the International Executive Board, but shall not include the Regional Director of the region from which the appeal originates. . . . After a review of the appeal the committee may hold a hearing, before either the full committee or, in its discretion, one of its members, . . . If a hearing is held, it shall be held as close to the locality from which the appeal originates as is possible in order to minimize expense and inconvenience to the appellant. The appellant and appellee (or their representatives) shall be required to appear before the Appeals Committee, with such counsel and witnesses as they may choose, and shall answer fully and truthfully all questions put to them by members of

the Appeals Committee. The extent and scope of the hearing shall be such as in the discretion of the committee shall bring to light all facts and issues involved. The appellant and/or appellee shall each be entitled to submit any briefs or any other written statements of position that either of them may wish."

2. The present members of the Public Review Board are: *Msgr. George G. Higgins,* Chairman, who is the Director of the Division for Urban Life, Department of Social Development, U. S. Catholic Conference; *Dr. Jean T. McKelvey* of the New York State School of Industrial and Labor Relations; *Professor Harry W. Arthur,* Associate Dean of Osgood Hall Law School, York University, Ontario, Canada; University of Michigan Law School Dean and labor arbitrator *Theodore St. Antoine; Professor James E. Jones, Jr.,* of the University of Wisconsin Law School; *Honorable Frank W. McCulloch,* former Chairman of the National Labor Relations Board, currently Professor of Law, University of Virginia. Previous members have included Judge George E. Bowles of the Wayne County Circuit Court; Cook County, Illinois, Judge George N. Leighton; Federal Court of Appeals Judge Wade H. McCree, Jr.; the late Rabbi Morris Adler; and the Rev. Dr. Henry Hitt Crane, former minister of Detroit Central Methodist Church.

plete as the member could obtain through an action in a court. This Board has been lauded both by the courts and by commentators. For example, in *Parks v. IBEW*, 314 F.2d 886 (4th Cir. 1963), *cert. denied*, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963), the court said

> Some unions, like the United Automobile Workers have responded to the pressure for fairness in internal trial proceedings by establishing, essentially external to the union organization, independent public review boards having the final word. *Parks, supra,* at 913.

*See also*: "Impartial Public Review of Internal Union Disputes: Experiment in Democratic Self-discipline," 22 Ohio St.L. Rev. 64 (1960); "Judicial Control of Actions of Private Associations," 76 Harv.L.Rev. 983, 1035 (March, 1963).

Under Article 32, § 5(c), plaintiff could have, had his circumstances warranted, gone directly to the International Executive Board or Public Review Board, bypassing the Local step.

Plaintiff alleges that submission of a grievance which ultimately reached the arbitration stage of the grievance process was sufficient resort to intra-union remedies under the recent standards enunciated in *Ruzicka, supra*. However, in that case, the court stated

> Appellant's diligent processing of his complaint through 27 months of intra-Union proceedings is far more than "at least some opportunity" for Local 166 to resolve its dispute with him.

In the present case, the facts underlying the grievance did not rise until February 12, 1975. The decision by the Impartial Chairman of the Appeal Board was rendered July 8, 1975. No further action was taken by plaintiff in this matter until November, 1975, when suit was filed in this Court. Clearly, this does not come within the standards of *Ruzicka*.

Plaintiff also argues that proceeding with administrative remedies would have been futile since: "If Defendant-Union did nothing about a wholesale violation of the employment contract regarding the merger of four labor units why would they be expected to do anything about a minor matter?" (Pl's. Br., at p. 6). The rather lengthy description of the intra-union remedies available to the plaintiff demonstrates that any agreement reached between union and management regarding general standards as to lay-off and rehiring, in modification of an existing collective bargaining agreement, has no bearing upon the processing of grievances of an individual union member.

Thus, this Court also finds that the intra-union remedies available to the plaintiff were adequate, and, therefore, that his failure to exhaust them will bar the maintenance of this action against the Union.

■ Defendant Chrysler Corporation has also brought a motion for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure, on the grounds that (1) plaintiff has failed to state a cause of action upon which relief can be granted; (2) plaintiff's claim of unlawful discharge is barred because the matter has been resolved by final and binding arbitration; (3) plaintiff's claim of unlawful layoff is barred by failure to exhaust the grievance procedure; and (4) plaintiff has failed to exhaust the intra-union remedies, a prerequisite to suit against Chrysler for breach of a collective bargaining agreement.

Plaintiff alleges that his lay-off by Chrysler Corporation was "illegal," i. e., in contravention of the collective bargaining agreement. In ¶ 8 of his complaint, plaintiff alleges that the merger of the truck estimating operation with plaintiff's unit was contrary to the contract. In ¶ 15, plaintiff alleges that an agreement entered into between the UAW and Chrysler, which provided for the lay-off of two truck estimators and the recall of four passenger car estimators, was "an admission by the company and the union that he had been laid off illegally and had been subjected to a termination, without pay, which never would have occurred if the company had not violated the contract."

Plaintiff quotes two sections of the collective bargaining agreement which he alleges were violated by the merger of the

four units. Section 56 deals only with the rules governing the adjustment of seniority rights when employees transfer from one bargaining unit to another. This section does not deal with the transfer of operations,[3] and, therefore, does not apply to the present suit. Section 57 of the collective bargaining agreement deals with the transfer of operations from one seniority group to another within a bargaining unit represented by the Union.[4] The procedure clearly calls for negotiations between the Union and the corporation to resolve any disputes as to transfer of operations. The collective bargaining agreement, Section 57(f), clearly specifies that employees transferred from one unit to another shall transfer with their full seniority to the receiving seniority group or unit. Plaintiff has failed to allege any conduct which could reasonably be interpreted as a violation of this section. After merging the groups, Chrysler proceeded to rehire the laid-off employees based upon the merged seniorities of the groups, taken as a single unit. This action seems entirely consistent with the provisions of Sections 56 and 57 of the collective bargaining agreement. Plaintiff was not rehired at that time because he had the status of a discharged employee pending completion of the collective bargaining agreement.

■■■ Even if the actions of the corporation did constitute a violation of the agreement, the plaintiff made no effort to file a grievance, or otherwise institute the grievance procedure mandated under the collective bargaining agreement. As stated earlier, the grievance of an employee who is subject to a collective bargaining agreement between his union representative and his employer must be settled pursuant to the grievance procedure established by that agreement where the process ends in final and binding arbitration. The courts are to interject themselves in such matters only in rare circumstances, such as when the union fails to fairly represent an employee in the grievance process. Plaintiff never initiated a grievance with regard to his lay-off (Aff. of Philip W. Klintworth). Since the Union never received official notification that plaintiff desired to be represented as to this matter, the plaintiff cannot now be heard to complain that the Union breached its duty to represent him. Thus, the plaintiff is bound by the rule that he must abide by the remedies under his collective bargaining agreement. *Vaca v. Sipes, supra; Anderson v. Ford Motor Company,* 319 F.Supp. 134 (E.D.Mich.1970); *Jenkins v. General Motors Corporation and the UAW,* 364 F.Supp. 302 (D.Del.1973); *Bsharah v. Eltra Corporation and the UAW,* 394 F.2d 502 (6th Cir. 1968).

■■ Plaintiff also alleges that Chrysler breached its collective bargaining agreement by wrongfully discharging him, by which discharge he was damaged to the extent of five and one-half months' lost benefits. However, as stated earlier, the loss of past time is directly attributable to the decision of the Impartial Chairman of the Appeal Board, rather than any act on the part of the corporation. This Court

---

3. "(56) *Transfer of Employees*

(a)—An employee who is transferred either by the Corporation or at his own request from one bargaining unit represented by the Union to another such unit shall start work as a new employee in the unit to which he is transferred and shall retain his seniority in the former unit for a period of time equal to the seniority he had at the time of such transfer, or for twelve (12) months, from the date he last worked in said unit whichever is longer, *provided however, that employees who transfer with operations will be transferred pursuant to Section (57).*" (Emphasis added).

4. "(57)

(b)—When operations are to be transferred from one such unit to another such unit, the Corporation will notify the International Union of such transfer. Such notice will be given as promptly as the circumstances in each case permit. The Corporation, at the request of the International Union, will negotiate the advisability of transferring to the receiving unit employees who are affected by the transfer of the work.

(f)—*Employees transferred from one seniority group to another seniority group or from one unit to another unit as provided in this Section shall transfer with their full seniority to the receiving seniority group or unit, and their seniority in the former seniority group or unit shall terminate.*" (Emphasis added).

may not review that decision. *Steelworkers Trilogy*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

This Court has already determined that the motion for summary judgment as to Defendant UAW must be granted because plaintiff has failed to state a cause of action upon which relief could be granted, and because he failed to exhaust his intra-union remedies as to the processing of his discharge grievance. As Judge Feikens stated, in *Willie Brookins v. Chrysler Corporation, The United Auto Workers of America and Dodge Local No. 3*, 381 F.Supp. 563, 567 (E.D.Mich.1974)

> As a general rule, 'individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress'. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965) (emphasis, footnote omitted). However, 'the employee may seek judicial enforcement of his contractual rights . . . if, as is true here, the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance'. *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967) (emphasis omitted). Thus,
>
> > 'the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.' *Id.* at 186, 87 S.Ct. [903] at 914.

The crucial question then in determining whether Chrysler may be sued despite plaintiff's failure to exhaust contractual grievance procedures is whether the union's dismissal from the case (and the reasons therefor) leaves the plaintiff in a position to 'prove that the union . . . breached its duty of fair representation.'

\* \* \* \* \* \*

The key to resolving this issue is the nature of the remedies which the employee must exhaust. If they were before an administrative agency it would seem logical to conclude that it would be the remedy and not the wrong itself which the exhaustion doctrine would deny. But where the required procedures are those available from the allegedly offending union itself, and pursuit of them 'could result in a reversal of the Union's action in refusing to process a grievance and a concomitant timely filing or reinstating of the grievance according to the provisions of the collective bargaining agreement', *Orphan v. Furnco Constr. Co., supra*, 446 F.2d [795] at 801 [7 Cir.], the opposite is true. By exhausting his internal remedies the employee may be able to eliminate the very wrong of which he complains, not merely obtain a remedy therefor in another forum. If the union's wrongful refusal to continue the grievance were reversed without prejudice to his rights, the employee would no longer have a cause of action for breach of the duty of fair representation, and consequently would have no right under *Vaca* to sue his employer for breach of contract. This conclusion is consistent with the national labor policy in favor of arbitration. *Orphan v. Furnco Constr. Co., supra*. See generally *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). It is also consistent with the preference for finality and against interlocutory appeals in judicial review of administrative action generally. See K. Davis, Administrative Law Treatise § 20.05 (1958, Supp.1970).

In this case the remedies available to plaintiff through the internal appeal pro-

cedure were fully adequate to make him whole, should it have been determined that his grievance was improperly withdrawn. By pursuing them he would have given the union a chance to reverse its earlier actions and effectually prevent any inchoate breach of its duty of fair representation. Not having done so he is in no position to prove that the union committed such a breach and cannot therefore take advantage of *Vaca* to avoid Chrysler's defense of exhaustion. Summary judgment must also be entered dismissing Chrysler from the cause.

The same principle applies in the case before the court here.

In light of the above considerations, IT IS ORDERED that Defendants' Motions for Summary Judgment be, and hereby are, granted.