**Rosalinda MILLER, Plaintiff,**

v.

**LOCAL 50, AMERICAN FEDERATION OF GRAIN MILLERS, and the D. H. Food Company, a corporation, Defendants.**

**Civ. No. 77–0–473.**

United States District Court, D. Nebraska.

March 14, 1979.

James H. Monahan, Omaha, Neb., for plaintiff.

David D. Weinberg, Omaha, Neb., for defendant, Local 50, American Federation of Grain Millers.

Michael W. Hawkins, Harold S. Freeman, Cincinnati, Ohio, Larry Forman, Omaha, Neb., for defendant, D. H. Food Co.

## MEMORANDUM

DENNEY, District Judge.

Rosalinda Miller was hired by The D. H. Food Company in the summer of 1976. Employed on the packing line, Miller completed her probationary period and became a member of Local 50 of the American Federation of Grain Millers.

On November 8, 1976, the plaintiff was discharged from her job. The termination of the employment relationship was attributed to Miller's consistent failure to call in and inform the company that she would be

absent from work due to illness. Miller immediately contacted Michael Taylor, the local union business representative, about the possibility of filing a grievance. Four days after that telephone conversation, Miller went to the union hall and received assistance from Taylor in filling out the proper forms. Taylor instructed the plaintiff to take the written grievance to the union steward at The D. H. Food Company's plant, located approximately two miles from the union's headquarters. Fearful of returning to her employer's place of business, but mindful of Taylor's admonition that the grievance should be filed that day, Miller entrusted her grandfather with the task. According to the plaintiff, her grandfather was denied entry to the plant. Forced to leave the grievance with a receptionist, the grandfather was allegedly assured that the grievance would be forwarded to the steward.

The timing of the delivery of the grievance is crucial because of the provisions of the collective bargaining agreement. Under Section 2(c) of Article XI, an appeal from a discharge must be taken within five days of the termination of employment. The plaintiff's position is that the grievance was delivered to the food plant on November 12, four days after the firing of Miller. The D. H. Food Company contends that the grievance was not filed until November 17, 1976, and that, under the language of the collective bargaining agreement, the objection was "completely waived."

Miller subsequently filed a complaint in federal district court, alleging that The D. H. Food Company wrongfully discharged her from employment. Jurisdiction exists under 29 U.S.C.A. § 185 (1978). A pendent claim of defamation is also asserted against Miller's former employer. Miller's complaint further alleges a breach of the union's duty to fairly and adequately represent her.

On the eve of trial, The D. H. Food Company filed a motion for summary judgment. The thrust of the company's argument is directed towards Miller's failure to exhaust either contractual or internal union remedies. The lack of any material issues of fact is also raised. Local 50 of the American Federation of Grain Millers has joined in the company's summary judgment motion, and, in the alternative, has requested the entrance of an order of dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

After reviewing the pleadings, the plaintiff's deposition, the answers to interrogatories, affidavits, and exhibits, the Court concludes that the motion of the union should be granted because of Miller's failure to invoke intra-union appeal procedures, and that an action against an employer cannot be maintained in the absence of an exhaustion of existing contractual remedies. A determination of the applicability of internal union remedies to the facts in this case is necessary before the propriety of summary judgment in favor of Local 50 can be demonstrated.

## UNION LIABILITY

### Internal Union Remedies

When Rosalinda Miller became a member of the American Federation of Grain Millers, she pledged to "observe faithfully the Constitution and Laws of this Union", and to "comply with all rules and regulations for the government thereof."

Three portions of the Constitution and By-laws of the American Federation of Grain Millers International Union bear upon the question of the existence of adequate intra-union remedies. Section 7 of Article I provides as follows:

The International Union and the Local Union to which the member belongs, and each of them, are by him irrevocably designated, authorized and empowered exclusively to appear and act for him and in his behalf before any court, arbitrator, board, committee or other tribunal or agency in any matter affecting his status as an employee and exclusively to act as his agent, either in his name or the name of the union as the case may be, to represent and bind him in the presentation, prosecution, adjustment and settlement

of all grievances, complaints or disputes of any kind or character arising out of the employer-employee relationship, as fully and to all intents and purposes as he might or could do if personally present.

Section 8(g) of Article II further provides:

Whenever a grievance is terminated by any official or officer of a Local Union, any grievant who protests such termination shall have the duty to submit his protest in writing to the President of the Local Union who shall refer the matter to the Local Union Executive Board. The Executive Board or a subcommittee authorized by said Board shall review all of the facts and circumstances involved. The decision of the Board to pursue or not to pursue the grievance through further steps of the grievance procedure, including arbitration of said grievance, shall be final unless the Executive Board is otherwise instructed by the International President.

Section 2 of Article VIII contains the following language:

No officer, member or Local Union shall be heard to complain that the remedies afforded under this Constitution are inadequate or that the pursuit of such remedies would be futile. By the adoption of this Constitution and by the affiliation of Local Unions with the American Federation of Grain Millers and the acceptance of membership in this organization, the adequacy of the remedies for redress of internal grievances of any kind or character through the machinery herein established is confirmed.

All of these provisions, which are exclusive in nature, are valid and binding upon the plaintiff. 29 U.S.C.A. § 411(4) (1975).

### Union's Actions as a Termination

Before internal union remedies are applicable to the present controversy, a "termination" of a grievance, within the meaning of Section 8(g) of Article II, must exist.

Section 2(c) of Article XI of the collective bargaining agreement entered into between the defendants provides as follows:

Appeal from discharge must be taken within five days, excluding Sundays and holidays, from the date of discharge by written notice to the Company setting forth the ground of appeal. The Company agrees to grant a hearing on an appeal from discharge within twenty-four hours after the time of appeal. If such objection to such discharge is not taken within said period, then objection to such discharge shall be completely waived. If appeal from discharge cannot be satisfactorily adjusted between the Company and employee or between the Company and the Union within five days from the date of such appeal, then the matter, upon request of either party shall be submitted to arbitration as provided in this agreement.

■ An interpretation of the scope of the right to arbitration is a necessary preliminary step. If no dispute existed as to the timeliness of Miller's grievance, Article XI would have allowed arbitration upon request in the absence of a satisfactory adjustment. A different question arises if an aggrieved employee appeals from her discharge after the five day period has expired. The collective bargaining agreement appears to foreclose a union member from arbitration under such circumstances. A complete waiver does not exist if the grievance could be addressed on the merits by a board of arbitration despite a failure to comply with the five day rule. If no question of fact existed as to the lateness of the filing, the grievance could not be arbitrated. *Cf. Ethier v. United States Postal Service*, 590 F.2d 733, 734–736 (8th Cir. 1979).

■ A question of fact exists as to the actual date of the delivery of the grievance to the company. The issue that remains is whether such a controversy is subject to scrutiny by an arbitration board. Although the language of the collective bargaining agreement is not entirely clear, relevant principles of interpretation require that uncertainty as to the arbitrability of a certain issue should be resolved in favor of coverage. *Gateway Coal Co. v. UMW*, 414 U.S.

368, 377–80, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In light of the federal policy that recognizes the desirability of resolution of collective bargaining agreement disputes by the contracting entities, the Court holds that, under Article XI, a dispute over the filing date of an employee's grievance is arbitrable.

 In a motion for summary judgment, a court is required to "give the non-moving party the benefit of all reasonable inferences to be drawn from the facts." *Butler v. MFA Life Insurance Co.,* 591 F.2d 448, 451 (8th Cir. 1979). Viewing the evidence in a light most favorable to Miller, it appears that The D. H. Food Company would not talk to the Union's business representative about the merits of Miller's grievance because of the lateness of the filing. Taylor never requested that the matter be arbitrated. Under these circumstances, the Court holds that Taylor caused the grievance to be terminated within the meaning of Article II of the International Union's Constitution and By-laws.

### Effect of the Failure to Exhaust Internal Union Remedies

 The exhaustion of internal union remedies is a prerequisite to a § 301 suit against a union or its officers in federal court. *Willetts v. Ford Motor Co.,* 583 F.2d 852, 855–57 (6th Cir. 1978); *Keppard v. International Harvester Co.,* 581 F.2d 764, 766–67 (9th Cir. 1978); *Neal v. System Board of Adjustment,* 348 F.2d 722, 726 (8th Cir. 1965); *Emmanuel v. Omaha Carpenters District Council,* 422 F.Supp. 204, 207 (D.Neb.1976), aff'd 560 F.2d 382 (8th Cir. 1977). As the plaintiff does not allege that resort to internal union remedies would be futile or inordinately time-consuming, the Court concludes that summary judgment in favor of Local 50 is proper.

 The D. H. Food Company takes the position that Miller's failure to exhaust her intra-union remedies is a defense that should extend to the employer. A number of federal district courts have agreed with this argument when resort to internal union remedies could result in reinstatement of the grievance rather than disciplinary sanctions against responsible union officials. *See, e. g., Hedge v. Deere & Co.,* 85 L.C. ¶ 11,037 (S.D.Ill.1978); *Neipert v. McKee & Co.,* 448 F.Supp. 206 (E.D.Pa.1978); *Bradley v. Ford Motor Co.,* 417 F.Supp. 23 (N.D.Ill. 1975); *Fleming v. Chrysler Corp.,* 416 F.Supp. 1258 (E.D.Mich.1975), aff'd 575 F.2d 1187 (1978). This reasoning is not without appeal, as the federal policy preference for arbitration over litigation is served, and the aggrieved union member has access to a remedy which may preclude further resort to a court of law. Despite the preferability of extending the defense to the employer where, as here, the possibility of ultimate vindication exists, this Court feels bound by the Eighth Circuit's decision to the contrary in *Petersen v. Rath Packing Co.,* 461 F.2d 312, 315 (8th Cir. 1972). In *Petersen,* a three judge panel categorically held that an employee is not required to exhaust internal union remedies prior to instigating suit against an employer where such a provision is not within the collective bargaining agreement. Although that decision involved an intra-union remedy which was essentially futile, the broad language in *Petersen* cannot be distinguished and is binding upon this Court under stare decisis principles. The motion for summary judgment of D. H. Food can be sustained only if some alternative ground exists.

## LIABILITY OF THE EMPLOYER

### Exhaustion of Contractual Remedies

Both the business representative for the local union and the company's administrator of the collective bargaining agreement have stated, by way of affidavit, that Rosalinda Miller never filed a request for arbitration on her grievance. The plaintiff does not dispute this characterization.

 The failure to exhaust available grievance remedies contained in a collective bargaining agreement deprives a federal court of power to adjudicate the wrongful discharge issue on the merits. *Woody v.*

*Sterling Aluminum Products, Inc.,* 365 F.2d 448, 452–53 (8th Cir. 1966), *cert. denied* 386 U.S. 957, 87 S.Ct. 1026, 18 L.Ed.2d 105 (1967); In *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), the Supreme Court explained the rationale underlying this federal labor policy in the following terms:

> . . . there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the "common law" of the plant. LMRA § 203(d), 29 U.S.C. § 173(d); § 201(c), 29 U.S.C. § 171(c) (1958 ed.). Union interest in prosecuting employee grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.

A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation "would inevitably exert a disruptive influence upon both the negotiation and administration or collective agreements." *Teamsters Local v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593.

*Republic Steel Corp. v. Maddox, supra,* 379 U.S. at 653, 85 S.Ct. at 616, 617.

The rule set forth in *Republic Steel* has retained its vitality in subsequent cases. *See, e. g., Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes,* 386 U.S. 171, 184–85, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Coe v. Rubber Workers,* 571 F.2d 1349 (5th Cir. 1978); *Neal v. System Board of Adjustment, supra,* 348 F.2d at 727.

A review of the collective bargaining agreement does not reveal alternative remedies to arbitration. Nor does the plaintiff assert that a lawsuit is a permissible vehicle for resolution of her discharge grievance in the absence of attempts to exhaust contractual remedies. Rather, Miller takes the position that she should not be required to follow procedures outlined in the collective bargaining agreement in the face of a repudiation of those contractual remedies by D. H. Foods and a refusal of Local 50 to fairly and adequately represent her interests.

*Repudiation of Contractual Remedies*

█ When the conduct of an employer amounts to a repudiation of exclusive remedial procedures within a contract, exhaustion of those remedies is not required. *Rabalais v. Dresser Industries, Inc.,* 566 F.2d 518, 519 (5th Cir. 1978); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 875 (3d Cir. 1972). The defendant would be estopped from raising such a defense under these circumstances. *Vaca v. Sipes, supra* 386 U.S. at 185, 87 S.Ct. 903.

█ The flaw in Miller's attempt to invoke this exception to the rule of exhaustion lies in her failure to attempt to take the controversy to arbitration. In *Robbins v. Prescott Publishing Co.,* 457 F.Supp. 915, 921 (D.Mass.1978), the following observation was made:

> Analytically and temporally, acts by an employer which are alleged to be substantive breaches of a bargaining agreement . . . cannot also serve as anti-remedial acts constituting employer repudiation of the grievance and arbitration pro-

cedure established for the resolution of those earlier substantive breaches. . . To hold otherwise would allow the repudiation exception to swallow whole the exhaustion requirement, since underlying substantive claims of breach of contract will always be at issue in § 301 cases.

As the plaintiff has failed to demonstrate, by affidavit or otherwise, that a repudiation of arbitration has taken place, this exception to the exhaustion rule is inapplicable. Even if the company acted improperly in declining to address Miller's grievance on the merits, the avenue to arbitration remained unobstructed.

*Union's Duty of Fair Representation*

 A second exception to the exhaustion rule exists where "the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Vaca v. Sipes, supra* 386 U.S. at 186, 87 S.Ct. at 914. Wrongful refusal to process a grievance constitutes a breach of the duty of fair representation "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes, supra* 386 U.S. at 190, 87 S.Ct. at 916. A finding of a breach of the duty requires "substantial evidence of fraud, deceitful action or dishonest conduct." *Amalgamated Ass'n of Street Employees v. Lockridge,* 403 U.S. 274, 299, 92 S.Ct. 24, 30 L.Ed.2d 120 (1971), *citing Humphrey v. Moore,* 375 U.S. 335, 348, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). A union "may not arbitrarily ignore a meritorious grievance or process it in a perfunctory [fashion] . . . ." *Vaca v. Sipes, supra* 386 U.S. at 191, 87 S.Ct. at 917. *Accord, Republic Steel Corp. v. Maddox, supra* 379 U.S. at 652, 85 S.Ct. 614; *Lomax v. Armstrong Cork Co.,* 433 F.2d 1277, 1280- 81 (5th Cir. 1970).

 The Court holds that the conduct of Local 50 in handling Miller's complaint was not so perfunctory as to rise to the level of being arbitrary, discriminatory or in bad faith. The plaintiff's deposition reflects that Taylor, the union's business represent-

ative, asked Miller to come to his office and file a grievance as soon as he heard of the termination. For reasons that are not apparent from the record, the plaintiff did not appear at the union hall until November 12, 1976, four full days after her discharge. Taylor aided her in filling out the proper forms and told Miller that the grievance should be filed that day, although he apparently never informed her of the five day limitation. Upon learning that the company refused to consider the grievance on the merits, Taylor independently verified the filing date and found the company's version of the facts to be accurate. Miller never asked the union to file a grievance on her behalf. As a result, Taylor never took any action to invoke the arbitration mechanisms under the collective bargaining agreement.

Miller's contentions at this stage appear to be twofold. She initially faults Taylor for failing to deliver the grievance to The D. H. Food Company personally. Miller further points to Taylor's failure to "back me up," and his acting "like he didn't even want to help."

Rule 56(e) of the Federal Rules of Civil Procedure provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Conclusory allegations do not create an issue of fact under this rule. *Bruce v. Martin-Marietta Corp.,* 544 F.2d 442, 445 (10th Cir. 1976). Miller must present more than the vague statements relating to Taylor's indifference contained within her deposition. The plaintiff has not demonstrated, through affidavit or other evidence, that Taylor had any duty to take the grievance to The D. H. Food Company personally. In her own deposition, Miller admits that she never asked Taylor to undertake such a

task. The Court concludes that no genuine issue of fact exists for a jury to decide.

██ Although Miller does not specifically raise the issue, her ignorance of the terms of the collective bargaining agreement is not a defense to the exhaustion requirement. *Cf. Kowalski v. Wisconsin Steel Works,* 433 F.Supp. 314, 316 (N.D.Ill. 1977) (ignorance of internal union remedies).

## PENDENT STATE CLAIMS

In addition to her Section 301 claims, Miller asserts that The D. H. Food Company gave her bad references that thwarted her efforts to obtain other employment and rendered her unable to obtain a home mortgage loan. Both of these specific allegations relate to the State of Nebraska's law of defamation.

██ In the absence of a justiciable federal claim, pendent jurisdiction does not exist. *Kuhn v. National Ass'n of Letter Carriers,* 570 F.2d 757, 760 (8th Cir. 1978). State claims will not be adjudicated by this Court in the absence of a federal base of jurisdictional power. *Briscoe v. Bock,* 540 F.2d 392, 394 (8th Cir. 1976). The Court declines to entertain the defamation claims asserted by Miller in light of the lack of federal court jurisdiction under Section 301 of the Labor Management Relations Act.

An order shall be filed contemporaneously herewith in accordance with this Memorandum Opinion.